OPINION *Page 2 
{¶ 1} Defendant-appellant Robert W. Schaaf appeals his conviction and the denial of his motion for acquittal on one count of having weapons while under disability entered in the Richland County Court of Common Pleas following a jury trial.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
STATEMENT OF THE FACTS AND CASE {¶ 3} Appellant, Robert Schaaf, lived with his "common-law" wife, Vernice Schaaf, on Castor Road in Shiloh, Ohio, from approximately 1993 to 2004. (T. at 146, 164-165). During their relationship, Appellant told Vernice that before they met, he had been convicted of felonious assault for shooting in the direction of his ex-wife. (T. at 149). In 1998, Appellant had another felony conviction for having weapons while under disability which arose from an incident where Vernice's son Bud returned to their house from a neighbor's party and saw Appellant with a gun. (T. at 150-151). Bud told his mother about the incident, and Vernice called the police because she knew Appellant was not legally permitted to own or possess firearms. (T. at 151).
 {¶ 4} According to Vernice, subsequent to Appellant's 1998 conviction for having weapons under disability, the relationship between him and Vernice began to deteriorate. She stated that Appellant became violent and controlling towards her. (T. at 147). By the fall of 2004, the two were still living together but were not communicating with one another or having a relationship. (T. at 152). Vernice would come and go as she pleased without telling Appellant were she was going or when she was coming home. (T. at 152). *Page 3 
 {¶ 5} In September of 2004, Vernice returned from a vacation with her daughter. (T. at 152). Appellant apparently had not expected her to come home at that time, and she found him sitting at the table cleaning two guns. (T. at 152, 157). When Vernice confronted Appellant about the guns, he responded, "They're mine." (T. at 153). After Vernice told him to get the guns out of the house, Appellant took them to a wooded area near the house and locked them in a blue barrel that was chained to a tree. (T. at 153). Once the guns were removed from the house, Vernice did not press the issue further or report it to the police claiming she was afraid of Appellant. (T. at 153, 161-162).
 {¶ 6} After this incident, Vernice left Appellant and stayed with her son and daughter. (T. at 153-154). During this time she returned to the house to retrieve some canning jars. Appellant confronted her, telling her that he was not going to allow her to leave and then he choked her. (T. at 154). Vernice managed to get away after Appellant went to work, and she called the sheriff. (T. at 154). Vernice refused to press domestic violence charges against Appellant; however, she did seek and obtain a civil protection order against him. (T. 154-155).
 {¶ 7} On October 15, 2004, after obtaining the civil protection order, Vernice called the Richland County Sheriff's Office to have officers accompany her to the house she shared with Appellant so that she could obtain her medication and clothing. (T. at 155, 164-165). Deputy James Sweat, Jr. initially responded; however, he told Vernice that he wanted to wait for backup before entering the house based on the history of domestic violence. (T. at 155, 165).
 {¶ 8} While they were waiting for back-up to arrive, Deputy Sweat asked Vernice if she knew of any weapons in the house. (T. at 156, 165). Vernice told him that *Page 4 
Appellant had put some guns in a barrel outside of the house a month before. (T. at 156-157, 165). She described one of the weapons as a shotgun, and the other two as "war-style, machine-gun type weapons." (T. at 157-158, 166).
 {¶ 9} When Deputy Winbigler arrived to provide backup, he and Deputy Sweat cautiously approached the residence and made contact with Appellant. (T. at 166). Deputy Sweat advised Appellant that they were there to serve him with a civil protection order and to allow Vernice to obtain her medicine and clothing from the residence. (T. at 166).
 {¶ 10} Upon informing Appellant of Vernice's allegation that he had guns, Appellant denied having knowledge of any such weapons. (T. at 167). Deputy Sweat then asked Appellant to voluntarily come to the Sheriff's Office to discuss the weapons' issue more thoroughly. (T. at 167). Appellant then left the residence with Deputy Winbigler. (T. at 167-168).
 {¶ 11} After Appellant left the home, Deputy Sweat obtained further information from Vernice about the weapons. (T. at 168). She told him that Larry Gumber, a friend of Appellant, had told her the weapons were at his home in Ashland. (T. at 168). At that point, Deputy Sweat contacted the Ashland Police Department to request assistance in contacting Mr. Gumber at his residence. (T. at 169).
 {¶ 12} Mr. Gumber initially denied any knowledge of the weapons; however, after further discussion with the officer from Ashland, he eventually admitted that he did have weapons which belonged to Appellant. (T. at 169-170). After Mr. Gumber admitted to hiding weapons for Appellant, the officers recovered an AK-47, an SKS, and a .16 gauge shotgun from the residence. (T. at 170). These weapons matched the description *Page 5 
given by Vernice Schaaf of the guns she had seen Appellant cleaning the month before. (T. at 170).
 {¶ 13} After recovering the weapons from Mr. Gumber's house, Deputy Sweat returned to the Richland County Sheriff's Office and spoke with Appellant. (T. at 172). After waiving his Miranda rights, Appellant gave a statement regarding the subject weapons. (T. at 172). In his statement, Appellant indicated he had acquired the AK-47 six years before, in 1998. (T. at 176, 177). He also admitted that he had purchased the .16 gauge shotgun the year before from an individual named John Stein for $75.00. (T. at 177). Upon reviewing Appellant's criminal record, Deputy Sweat found Appellant had been convicted of felonious assault in 1987 and of having weapons while under disability in 1998, which means that he would have been under a disability from owning firearms at the time these weapons were purchased. (T. at 177).
 {¶ 14} An ATF trace on the ownership of the weapons corroborated Appellant's statement as to where and when he acquired them. Deputy Sweat contacted the last two registered owners of the AK-47 and the SKS, and both remembered selling the weapons in the same time frame Appellant said he had purchased them. (T. at 182). Appellant stated that he purchased one of the weapons from a man who lived in Bellville, and the last known owner of that weapon indicated that he did reside in Bellville. (T. at 182). While he did not remember specifically to whom he had sold the weapon, he remembered the time frame as being the same as that given by Appellant. (T. at 182). The police were unable to trace the last registered owner of the shotgun because it did not have a serial number. (T. at 182-183). All three weapons were test-fired by the crime lab and found to be operational. (T. at 183). *Page 6 
 {¶ 15} The Richland County Grand Jury indicted Appellant on one count of having weapons while under disability, a felony of the third degree. The indictment alleged that the offense occurred on or about October 12, 2004.
 {¶ 16} Appellant entered a not guilty plea at his arraignment, and his case was assigned to Judge James DeWeese.
 {¶ 17} On June 7, 2007, Appellant's jury trial commenced. During his trial, Vernice Schaaf testified that she called the sheriff's deputies to come to her house sometime in the middle of October, 2004, after she obtained a civil protection order against Appellant; however, she was not sure as to the exact date. (T. at 155). Deputy James Sweat, Jr. later testified that he was called to the residence on October 15, 2004, where he made contact with Ms. Schaaf and Appellant. (T. at 164-167). That same day, following up on information provided by Vemice Schaaf, Deputy Sweat seized three guns from Larry Gumber's residence in Ashland, Ohio, and Appellant admitted ownership of those weapons. (T. at 169-170, 176-177).
 {¶ 18} At the conclusion of the State's case, Appellant's attorney raised a Crim. R. 29 motion for acquittal. (T. at 186). The basis of his motion was that the State failed to prove that the offense occurred on October 12, 2004, the date alleged in the indictment. He argued that Appellant could not be convicted of the offense because the State failed to prove an essential element of the crime. (T. at 187). The State responded that the indictment alleged that the offense occurred "on or about" October 12, 2004, and that the evidence clearly established that the weapons were discovered on October 15, 2004, just three days after the date alleged. (T. at 187). The trial court agreed with the State's argument that, under the law, Appellant could be convicted of the offense as *Page 7 
long as it occurred on a date reasonably near the "on or about" date alleged in the indictment. Therefore, the trial court overruled the motion for acquittal. (T. at 190).
 {¶ 19} The jury returned a guilty verdict on the charge of having weapons while under disability. (T. at 208-211, 224). The trial court sentenced Appellant to three years in prison. (T. at 230).
 {¶ 20} Appellant now appeals his conviction and the denial of his motion for acquittal, raising the following assignments of error:
ASSIGNMENTS OF ERROR {¶ 21} "I. THE JURY'S VERDICT IN FINDING THE DEFENDANT-APPELLANT OF HAVING WEAPONS WHILE UNDER DISABILITY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS THE CONVICTION WAS IN VIOLATION OF ARTICLE I, 10 OF THE OHIO COSTITUTION [SIC] AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 {¶ 22} "II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT-APPELLANT'S MOTION FOR A CRIMINAL RULE 29 AQUITALL [SIC]."
 I., II. {¶ 23} In Appellant's first and second assignments of error, he argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 24} A motion for acquittal tests the sufficiency of the evidence.State v. Miley (1996), 114 Ohio App.3d 738, 742. Under Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach *Page 8 
different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261
 {¶ 25} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 26} In the instant case, Appellant was charged with one count of having weapons while under disability, in violation of R.C. § 2923.13(A)(2), which provides:
 {¶ 27} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 28} "(1) * * *
 {¶ 29} "(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." *Page 9 
 {¶ 30} Appellant argues that the State failed to prove a material element of the offense, namely that such offense occurred on October 12, 2004, as alleged in the indictment.
 {¶ 31} Upon review, we find Appellant's argument is improperly couched as a sufficiency of evidence claim. Ordinarily the precise dates and times are not essential elements of the offense, and a certain degree of inexactitude of averments, where it relates to matters other than elements of the offense, is not fatal to the prosecution. State v.Sellards (1985), 17 Ohio St.3d 169, 478 N.E.2d 781. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. Id.
 {¶ 32} In the instant case, the testimony of Vernice Schaaf testified that such offense occurred in the middle of October, 2004. (T. at 156-159). Deputy Sweat testified that he was called to the Schaaf residence on October 15, 2004. (T. at 164-165). Additionally, Appellant himself gave a taped statement on October 15, 2004, admitting to ownership of the weapons. (T. at 172-177). We find that such testimony placed the offenses within the general time frame of the dates specified in the indictment and the bill of particulars. State v. Adams, Licking App. No. 02-CA-00043, 2002-Ohio-5953.
 {¶ 33} Appellant does not claim that the State failed to prove any of the essential elements of the offense.
 {¶ 34} Based on the foregoing, we find substantial credible evidence to support the jury's finding of guilty and that the jury did not clearly lose its way. *Page 10 
 {¶ 35} Appellant also argues that his conviction is against the manifest weight of the evidence based on the same argument that the State failed to prove a material element of the charge: that the offense occurred on or about October 12, 2004.
 {¶ 36} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 37} Upon review, we find that "the jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "`While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence'". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 sic[.] Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.(sic); State v. *Page 11 Burke, Franklin App. No. 02AP1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096."
 {¶ 38} We conclude the jury did not create a manifest miscarriage of justice so as to require a new trial. Accordingly, we also find the verdict is not against the manifest weight of the evidence.
 {¶ 39} Appellant's first and second assignments of error are overruled.
 {¶ 40} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Wise, J. Hoffman, P. J., and Gwin, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
 Costs assessed to appellant.